IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOEL STEEVEN MORA BARBERAN,<br>Petitioner,<br>v.<br>BRUCE SCOTT, Warden of Northwest Immigration Processing Center; and ICE FIELD OFFICE DIRECTOR,<br>Respondents. | No. 2:26-CV-03245-SAB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Before the Court is Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1. Petitioner is representing himself in the matter. Respondents are represented by Michelle R. Lambert.

Petitioner is a citizen of Ecuador who entered the United States on May 2, 2023. He requests the Court order his immediate release, asserting that his underlying arrest was unconstitutional.

After entry into the United States, Petitioner was processed for expedited removal. Petitioner was released on humanitarian parole on May 20, 2023, pursuant to 8 U.S.C. § 1182(d)(5), which expired on May 19, 2024. Since the expiration of his parole, Petitioner has been arrested four times. After finding Petitioner to be a danger to the community, ICE re-detained Petitioner on May 29, 2026. Respondents assert that, since Petitioner's parole expired, his detention is mandated under 8 U.S.C. § 1225(b)(1)(B)(ii).

Noncitizens subject to § 1225(b)(1) can be temporarily paroled "for urgent humanitarian reasons" or for other purposes of "significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 283 (2018). Humanitarian parole automatically ends when the noncitizen either departs from the United States or if the parole period expires. 8 C.F.R. § 212.5(e)(1). In such a case, DHS is not required to give written notice of the termination of parole. *Id*. Alternatively, parole is terminated when its purpose has been fulfilled or when an authorized DHS official decides that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). Written notice is required under those circumstances. *Id*. Upon termination of parole, the noncitizen reverts to the status that they had at the time parole was granted. *Id*.

Respondents assert that, because Petitioner's parole automatically expired, they had the authority to re-detain him without notice. However, other courts in this district have found that, when DHS allows a significant period of time to lapse between the automatic expiration of humanitarian parole and subsequent re-detention, there is an implied continuation of the parole period for which DHS must follow the notice procedures outlined in 8 C.F.R. § 212.5(e)(2)(i) prior to re-detaining the noncitizen. *Kozlenko v. Hernandez et al.*, No. 2:26-CV-03194, 2026 WL 3016386, at *3 (W.D. Wash. Oct. 7, 2026). Respondents do not contend that they provided Petitioner with any specific notice or opportunity to be heard prior to re-detaining him. Petitioner was released on humanitarian parole on May 20, 2023, and the parole technically expired on May 19, 2024. Respondents did not re-detain petitioner until May 29, 2026, which implies a continuation of the parole period and obligates Respondents to provide Petitioner with written notice prior to re-detaining him. *Kozlenko*, 2026 WL 3016386, at *3.

Under these circumstances, courts have applied the *Mathews* test to determine whether DHS provided Petitioner with constitutionally adequate pre-

detention process. *Kozlenko v. Hernandez et al.*, No. 2:26-CV-03241, 2026 WL 3120777, at *3 (W.D. Wash. Oct. 19, 2026). The *Mathews* test weighs: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards," and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). When evaluating the third factor, Courts must analyze the governmental function involved, as well as the fiscal and administrative burdens that additional or substitute procedures would require. *Id*. at 335.

A finding in favor of an immigration petitioner under *Mathews* requires immediate release in order to restore the status quo. *See e.g., Rana v. Bondi*, No. 26-cv-244, 2026 WL 472800, at *4-5 (W.D. Wash. Feb. 19, 2026); *Lopez Camacho v. Ice Field Office Director*, No. 2:26-CV-00925-RAJ, 2026 WL 1243459, at *8 (W.D. Wash. May 6, 2026); *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, No. 2:26-CV-00695, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before his unlawful detention."). The status quo is the last uncontested status preceding the pending controversy. *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963).

The *Mathews* factors weigh in favor of Petitioner. First, Petitioner has a protected liberty interest in remaining free from custody, especially since he was released into the community in 2023. Second, the risk of deprivation of liberty is high: it does not appear that Respondents conducted a hearing or otherwise provided notice or an opportunity to be heard at the outset of Petitioner's re-detention to determine an individualized risk of flight or danger. Third, Respondents' interest in re-detaining Petitioner without a hearing is minimal: while

holding a hearing would have cost time and money, those costs are outweighed by Petitioner's liberty interests.

As Petitioner's re-detention was the impetus for the pending controversy, the Court finds it appropriate to order his immediate release. *Tanner*, 316 F.2d at 809. Furthermore, having a bond hearing at this stage would not cure the underlying constitutional violation; immediate release is the only way to return the status quo.

Accordingly, **IT IS HEREBY ORDERED**:

1. Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**.

2. **Within one (1) day of the date of this Order, Respondents shall release Petitioner from immigration detention.** Within two (2) days of the date of this Order, Respondents shall file a certification that Petitioner has been released.

3. Respondents shall not re-detain Petitioner without providing pre-detention notice and affording Petitioner a hearing unless detention becomes statutorily mandated.

4. At any re-detention hearing, Respondents shall bear the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 28th day of October 2026.

Stanley A. Bastian
United States District Judge